# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL,<br><br>                 Plaintiff,<br><br>        v.<br><br>K. CRUZ, et al.,<br><br>                 Defendants. | Case No.: 1:19-cv-00782-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' EXHAUSTION-RELATED MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 29) |

Plaintiff Kareem Howell is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed September 2, 2020.

///

///

///

///

///

1

# I.

# RELEVANT BACKGROUND

This action is proceed against Defendant Cruz, Borona, Raschke,[1] and Randolph for retaliation, and against Defendant Raschke for excessive force.

Defendants filed an answer to the complaint on February 4, 2020.  (ECF No. 21.)

On March 4, 2020, the Court issued the discovery and scheduling order, and granted Defendants' request to limit discovery to the issue of exhaustion.  (ECF Nos. 25, 26.)

As previously stated, on September 2, 2020, Defendants filed the instant motion for summary judgment.  (ECF No. 29.)  Plaintiff filed an opposition on October 13, 2020, and Defendants filed a reply on October 21, 2020.  (ECF Nos. 33, 34, 35.)  Accordingly, Defendants' motion for summary judgment is submitted for review without oral argument.  Local Rule 230(l).

# II.

# LEGAL STANDARD

## A.    Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory unless unavailable.  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted).  "Proper exhaustion

---

[1] The Court notes that Plaintiff initially identified Defendant Raishke as "Raschke."  However, based on the filing by Defendants, the Court has corrected the spelling from "Raishke" to Raschke.

demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The failure to exhaust is an affirmative defense, and the defendant or defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166.  Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. Id.

### B.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d

3

1011, 1017 (9th Cir. 2010).  "The evidence must be viewed in the light most favorable to the
nonmoving party."  Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

Initially, "the defendant's burden is to prove that there was an available administrative remedy,
and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  If the
defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward
with evidence showing that there is something in his particular case that made the existing and
generally available administrative remedies effectively unavailable to him."  Id.  However, the
ultimate burden of proof on the issue of administrative exhaustion remains with the defendant.  Id.  "If
undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a
defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts
are disputed, summary judgment should be denied, and the district judge rather than a jury should
determine the facts."  Id.

## III.

## DISCUSSION

### A.      Summary of CDCR's Administrative Appeal Process[2]

A prisoner in the custody of the California Department of Corrections and Rehabilitation
("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance
by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under
[CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the
department or its staff that the inmate … can demonstrate as having a material adverse effect upon his
or her health, safety, or welfare."[3]  An inmate is required to use a CDCR Form 602 to "describe the
specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  An inmate
is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all

_____

[2] On March 25, 2020, the grievance procedure outlined in § 3084.1, et seq., was repealed effective June 1, 2020, as an
emergency by the CDCR pursuant to Penal Code § 5058.3.  See CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020). However, the
parties do not dispute that the events alleged in the complaint took place before the repeal took effect.

[3] The applicable regulations in effect at the time of at issue herein are the June 2018 revisions. See Defs' motion at 5 n.1.

4

facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602.  Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4).  Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed.  Id.  If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief.  Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d).

**B.     Summary of Relevant Factual Allegations of Plaintiff's Complaint**

Plaintiff sued Defendant A. Randolph in a prior case filed in this Court which ended in a settlement.  Plaintiff has recently brought another civil rights action against Randolph.

In May 2019, Plaintiff received a disciplinary notice that Defendant Randolph had a disciplinary hearing for a rules violation report for "delaying a peace officer."  Plaintiff had no knowledge that a hearing was being held, and he was not allowed to attend the disciplinary hearing. During the illegal hearing process, Defendant Randolph gave Plaintiff a ninety-day loss of personal property.  Plaintiff filed a civil rights action against Defendant Randolph.

On May 16, 2019, Plaintiff's personal property was confiscated; however, when Randolph found out that Plaintiff filed an action against him, Plaintiff's properly was returned to him on May 20, 2019.

On May 22, 2019, Plaintiff was informed by Defendant Raschke that he was being re-housed to another unit and he was directed to pack his personal property.  Plaintiff finished packing his property at approximately 4:30 p.m., and Defendant Raschke handcuffed Plaintiff to escort him to his

new housing unit.  During the escort, Plaintiff observed that his personal property was on a cart being pushed behind him by Defendant G. Magana.  When Plaintiff entered his new housing unit, he was escorted to a holding cell in the staff hallway.  The holding cell is located in a blind spot where 98% of the inmates housed at Corcoran State Prison are physically attacked by correctional officers.  Defendant Raschke has a long history of using unnecessary physical force.  Within the last two weeks, Raschke has been accused of attacking several inmates for no reason while they were in handcuffs.

Defendant Magana took Plaintiff's personal property to cell number 49, while Plaintiff remained with Defendant Raschke.  Unprovoked and without warning, Defendant Raschke assaulted Plaintiff by slamming him head first into a brick wall.  Raschke then forcefully pushed Plaintiff into the holding cell and slammed the holding cell door closed security it by locking it into place.  Raschke then left the immediate area making it appear like he did nothing to Plaintiff.  As Plaintiff stood in the holding cell with his hands cuffed behind his back, a mental health staff member observed that Plaintiff had injuries to his head and went to report the incident.  Shortly thereafter, Defendant Raschke returned to the holding cell with Defendant Magana who had no clue of what had just occurred.  Raschke acted as if nothing happened.  Plaintiff's personal property was inside of his new unit and it was ready for Plaintiff to move in.  When Magana asked if he was ready to move in, Plaintiff said "No, your partner assaulted me when you left us alone out here.  Look at my head.  I'm waiting for the supervisor to come."  Raschke immediately told Plaintiff to "shut the fuck up" and he denied the physical assault.  Raschke then went to the staff office with Magana and another housing officer and they closed the door.  When they all came back to the hallway, Raschke told Plaintiff, "I'm taken your personal property from you.  You're on a property restriction."  Before Raschke could take Plaintiff's personal property, his supervisor A. Borona approached.  Raschke began explaining to Borona what happened and how Plaintiff received the head injury.  Raschke admitted that he pushed Plaintiff into the wall because he though Plaintiff was about to attack him.  Plaintiff immediately denied the claim and told Borona what happened.  Borona told Plaintiff, "Well.  I wasn't here to see what happen but I'll say this.  You keep your mouth closed, and when medical come in here refuse to talk to them.  Go back to our cell and keep all your personal property and none of this shit ever happen."  Plaintiff replied, "No, I'm telling the truth that officer keep beating inmates up and yall [sic]

keep covering up for him.  I'm report him to the Facility Lieutenant.  Go call the Lieutenant right now. I'm telling."  Borona stated, "Fine, tell, report him and we are going to take all of your personal property, and leave your ass in that cell with nothing."  Thirty minutes later, Facility Lieutenant K. Cruz arrived.  Plaintiff told her that Raschke attacked him for no reason.  Cruz responded, "my officers don't go around attacking inmates without reason…what did you do?"  Plaintiff said, "I didn't do nothing … that officer has priors and you know it because he just beat another inmate up in handcuffs on Sunday (May 19, 2019) and that inmate had to go to the emergency room.  He didn't do anything either, did he? … and before that your officer assaulted inmate Beneifield on (April 28, 2019) and he didn't do anything.  Now … today he attacked me and you're here attempting to cover it all up huh?"  Cruz stated, "I'm not covering anything up.  [D]o you want to talk about your personal property or being assaulted by him?"  Plaintiff said he wanted to talk about both issues.  Cruz said it was too late, "I'm taking all of your personal property.  (Randolph) has placed you on property restriction until August 2019."  Plaintiff asked for an inmate appeal form but it was denied.

Plaintiff has been legally diagnosed as suffering from bipolar and psychotic features.  Any decision concerning Plaintiff's mental health program needs must be determined by the mental health treatment team, and Plaintiff's primary mental health doctor, not custody staff.  Although Plaintiff explained the situation to Lieutenant Cruz, Defendant C. Gonzalez went into Plaintiff's cell and took his clothing, personal television, personal radio and legal typewriter.  The taking of Plaintiff's appliances has prevented Plaintiff from the benefit to maintain psychiatric stability.  Plaintiff has not been afforded a disciplinary hearing on the illegal taking of his personal property.  Rather, Defendants Cruz, Borona and Raschke claimed Plaintiff was on a property restriction from Defendant Randolph who clearly retaliated against Plaintiff for filing a civil rights complaint against him.  Defendant Raschke would not provide Plaintiff with an inmate appeal form.

Plaintiff was placed into his living cell at which time he asked Defendant K. Cruz, "You like to mistreat mentally challenged inmates?  Cruz stated, "Nope, only the ones who like to file lawsuits on my co-workers."

///

///

### C.       Statement of Undisputed Material Facts[4]

1.       At all relevant times, Plaintiff Kareem Howell was a state prisoner in the lawful custody of California Department of Corrections and Rehabilitation (CDCR) and was housed at California State Prison, Corcoran (CSP-Corcoran). (Compl. 1-2, ECF No. 1.)[5]

2.       At all relevant times, Defendants Cruz, Baraona, Randolph, and Raschke worked as custody staff at CSP-Corcoran. (Compl. 6.)

3.       Between May 1, 2019, and June 4, 2019, Plaintiff submitted three non-medical grievances for first or second level regarding events at CSP-Corcoran: (1) CSPC-5-19-02917; (2) CSPC-5-19-03073; and (3) CSPC-5-19-03546.  (Declaration of Ceballos [Ceballos Decl.] ¶ 11, Exs. A-D.)

4.       During the same time, Plaintiff submitted three non-medical grievances for a third level review: (1) 1900935; (2) 1905950; and (3) 190592.  (Declaration of Moseley [Moseley Decl.] ¶¶ 8-11, Exs. 1-5.)

5.       None of Plaintiff's grievances concerned the underlying events in this case.  (Ceballos Decl. ¶ 11, Exs. A-D; Moseley Decl. ¶¶ 8-11, Exs. 1-5.)

6.       Plaintiff did not submit a grievance concerning all of the facts contained in the complaint. (Compl. at 2.)

7.       Between December 19, 2008, and June 4, 2019, Plaintiff submitted over one hundred appeals that were processed by the CSP Corcoran Appeals Office.  (Ceballos Decl. ¶ 6.)

8.       Plaintiff was deposed on February 14, 2020, for his case <u>Howell v. Liddell</u>, No. 2:19-cv-00578 (E.D. Cal.).  (Liddell Dep., Declaration of Goodwin [Goodwin Decl.], Ex. 1.)

9.       At that deposition, Plaintiff testified to his awareness during the time relevant to the present case that inmates can obtain grievance forms at the institution's law library. (Liddell Dep. 75:21-76:13; 180:2-6.)

---

[4] Hereinafter referred to as "UMF."

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

10.     Plaintiff further testified to his awareness that he had thirty days to submit an administrative grievance from the date of the incident he was grieving.  (Liddell Dep. 180:10-13.)

11.     Plaintiff was deposed on March 6, 2020, for his case Howell v. Burns, No. 1:19-cv-00556 (E.D. Cal.)  (Burns Dep., Goodwin Decl., Ex. 2.)

12.     At that deposition, Plaintiff testified that a 602 is a green complaint form that Plaintiff can use to file an inmate grievance, which can also be referred to as an appeal.  (Burns Dep. 26:4-11.)

13.     Plaintiff testified that he has filed 602 forms during his time at CSP-Corcoran. (Burns Dep. 26:12-14.)

14.     To acquire a 602 form, Howell could ask a custody officer. (Burns Dep. 30:9-17.)

15.     Plaintiff also could obtain a 602 form at the law library. (Burns Dep. 30:24-31:31:5.)

16.     One way for Plaintiff to submit his 602 form was to put it into the outgoing mail at nighttime. (Burns Dep. 26:15-27:7; 31:6-21; Ceballos Decl. ¶ 6.)

17.     Another way for Plaintiff to submit his 602 form was to put it in the secure locked boxes located in the hallway of his housing unit. (Burns Dep. 27:10-31:5; Ceballos Decl. ¶ 5.)

**D.     Use of Plaintiff's Prior Deposition Testimony**

Pursuant to Federal Rule of Civil Procedure 32, a party's deposition may be used by an adverse party for any purpose.  Fed. R. Civ. P. 32(a)(3).  In addition, a party's deposition from an earlier lawsuit may also be used in a later lawsuit if they involve the same subject matter and the same parties or their representatives or successors in interest.  Fed. R. Civ. P. 32(a)(8).  The two lawsuits need not have identical issues and parties, but the deposition should relate to issues common to both lawsuits.  Hub v. Sun Valley Co., 682 F.2d 776, 778 (9th Cir. 1982); see also Hynix Semiconductor Inc. v. Rambus, Inc., 250 F.R.D. 452, 458 (N.D. Cal. 2008) (holding that "a previous party having like motive to develop the testimony about the same material facts" is sufficient to qualify as a predecessor in interest).

Here, Plaintiff is the same Plaintiff as in his other ongoing cases.  Although the Defendants are different, they are all employees of CDCR, and in Burns, employees specifically at CSP-Corcoran.  In addition, the general subject matter of exhaustion and the fact that Plaintiff is familiar with the process is the same in the cases.  At each of the prior depositions an adversary was present to examine Plaintiff

9

regarding his familiarity with CDCR's administrative grievance process.  Indeed, motions for summary judgment on administrative exhaustion grounds are pending in both of Plaintiff's other ongoing cases.  (Burns, ECF No. 31; Liddell, ECF No. 40.)  Therefore, Plaintiff's deposition transcripts from his two other cases are admissible for consideration in ruling on the instant motion.

### E.    Analysis of Defendants' Motion

Defendants argue that Plaintiff failed to submit a grievance regarding the events at issue in this action.  Instead, Plaintiff drafted his complaint and immediately proceeded to Court.

It is undisputed that between May 1, 2019, and June 4, 2019, Plaintiff submitted three non-medical grievances for first or second level regarding events at CSP-Corcoran: (1) CSPC-5-19-02917; (2) CSPC-5-19-03073; and (3) CSPC-5-19-03546.  (UMF 3.)  During the same time, Plaintiff submitted three non-medical grievances for a third level review: (1) 1900935; (2) 1905950; and (3) 190592.  (UMF 4.)

Based on Plaintiff's own allegations, there is no dispute that Plaintiff did not submit a grievance regarding his claims before filing his lawsuit—he states the fact in his complaint. (Compl. 2.) The alleged underlying incidents with Defendants occurred on May 22, 2019.[6] (Compl. 8.) The complaint was dated the next day on May 23, 2019. (Compl. 22.) The complaint was then electronically filed on June 4, 2019. (Compl. 1-1.) All of this occurred within the thirty-day timeframe that Howell could have submitted an administrative grievance. (See Cal. Code Regs. tit. 15, § 3084.8(b) (requiring grievances to be submitted within thirty days).)

In the complaint, Plaintiff argues he should be excused from the exhaustion requirement. (Compl. 2.) Plaintiff contends that in his interaction with Raschke, he requested a grievance form from Raschke, and Raschke denied him a form, stating, "No, you don't got shit coming." (Id.) Plaintiff contends that Raschke's refusal to provide him a grievance form rendered his administrative remedies unavailable. (Id.)

---

[6] Although Plaintiff's factual allegations are not entirely clear as to when Defendant Randolph allegedly took Plaintiff's property in retaliation, it is reasonable to infer that it took place sometime between May 20-22, 2019.  Nonetheless, Defendants have provided evidence that covers the entire month of May 2019.

The parties disagree as to whether administrative remedies were effectively unavailable to Plaintiff such that he should be excused from complying with CDCR's procedural requirements.

Initially, the Court finds that Defendants have met their initial burden of informing the Court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact concerning plaintiff's failure to exhaust administrative remedies. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does in fact exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   Construing all reasonable inferences from the evidence submitted in Plaintiff's favor, the Court concludes that Plaintiff has not submitted sufficient evidence to demonstrate a genuine issue of material fact concerning the exhaustion of his administrative remedies for the reasons explained below.

In order to establish that the failure to exhaust was excusable, plaintiff must show that:

> (1) the threat [of retaliation] actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) (quoting Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)). See also Rodriguez v. County of Los Angeles, 891 F.3d 776, 794 (9th Cir. 2018) (allegations of "general and unsubstantiated fears about possible retaliation" insufficient to satisfy inmate's burden to produce evidence of something in the particular case that rendered administrative remedies effectively unavailable) (citing McBride, 807 F.3d at 987-88; Arpin v. Santa Clara Valley Transportation Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat ... summary judgment motion") (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Plaintiff initially contends that when he requested a grievance from Defendant Raschke, Raschke denied him a form, stating, "No, you don't got shit coming."  Plaintiff contends that Raschke's refusal to provide him a grievance form rendered his administrative remedies unavailable. In support of this contention, Plaintiff submits a declaration from inmate Scott Edjuan (AL-7349).

(ECF No. 34 at 13.)  The declaration states that inmate Edjuan witnessed Raschke refuse to provide Plaintiff with a grievance from on May 22, 2019.  (Id.)

In his opposition, Plaintiff argues that on May 23, 2019, he submitted a CDCR Form GA-12 "Inmate Request for Interview" to prison officials at Corcoran demanding that they follow the rules and regulations and see to it that Plaintiff received a 602 grievance form within 24 hours of the May 22, 2019 incident.  (ECF No. 34 at 4.)  Plaintiff specifically stated that Defendant Raschke denied him the complaint form requested.  (Id. at 5.)  On May 24, 2019, correctional sergeant J. Burnes responded to Plaintiff's request stating, "Inmate Howell there are currently no appeal forms.  I'll speak with officer Raschke."  (Id.)

On May 27, 2019, Plaintiff contends that he sent a legal complaint letter to CDCR head officials explaining that he was physically assaulted by the Defendant and denied access to the appeals system.  (Id. at 5.)  Plaintiff submits an "Outgoing Legal Mail Receipt" dated May 27, 2019.  (Id. at 11.)  Although, the mail receipt indicates service on several entities, it was not sent to the California State Prison, Corcoran Appeals Office.  (Id.)  Plaintiff did not receive a response.  (Id. at 5.)  On June 4, 2019, he decided to file the instant civil rights action.  (Id.)

Plaintiff further contends that from May 22, 2019 to June 22, 2019, he did not have physically access to the prison law library to request and/or receive a complaint form, and he received no new appeal forms to file and no new appeals were submitted and filed on his behalf.  (ECF No. 34 at 5-6.)  Plaintiff contends the appeals tracking system log sheet shows that appeal CSPC-5-19-03546 was received by the appeals office on May 17, 2019, but then cancelled and returned to Plaintiff (with a 602 form) attached for resubmission on May 27, 2019.  (Id. at 6.)  Appeal CSPC-5-19-03562 was submitted on May 27, 2019 as a disciplinary appeal and the 602 appeal form is attached to it.  (Id.)  Plaintiff submits that he filed no new complaints other than resubmitted complaint forms CSPC-5-19-04054 and CSPC-5-19-04097, which are not relevant to this action.  (Id.)  Plaintiff "had other serious appeal obligations to attend to that require his attention.  (Id.)

With regard to Plaintiff's initial argument that Defendant Raschke's statement constituted threats of retaliation, the Court finds such statement fails to meet the McBride test.  In McBride, the plaintiff alleged that defendants had beaten him and told him he was "lucky" not to have been beaten

12

more severely; plaintiff then asserted that his subsequent grievance about the beating was untimely because he feared retaliation if he filed it. McBride, 807 F.3d at 985. The Court held that this did not satisfy the objective prong of the test:

> Even if McBride actually viewed the statements as threatening, the issue before us is whether the guards' statements could reasonably be viewed as threats of retaliation if McBride filed a grievance. As the district court recognized, the statements themselves make no reference to a grievance or to anything else, beyond the preexisting hostility, that might trigger a future attack on the part of the guards.

Id. at 988.

First, the only potential threat of retaliation is from Raschke stating, "No, you don't got shit coming." (Compl. at 2.) However, this is only a statement that Plaintiff doesn't "have anything coming." There is no element of adverse action expressed and no implication of future harm. Further, Plaintiff cannot show that the statement "you don't got shit coming" is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance. In addition, Plaintiff's alleges in his complaint that he discussed the administrative grievance process with Cruz, a correctional lieutenant, who encouraged Plaintiff to submit a grievance. (Compl. at 14.) Cruz told Plaintiff that she would have a medical staff member evaluate his alleged injuries and a correctional sergeant take down a statement. (Id.) Here, as in McBride, there is no allegation of any reference by Defendant Raschke or other prison official to the filing of a grievance. Indeed, the allegations of retaliation are arguably weaker than in McBride because Plaintiff does not allege any statements by Defendant Raschke that could be viewed as a threat. Under McBride, that is not sufficient to show that a reasonable prisoner of ordinary firmness would have believed that prison officials communicated a threat that if he filed a grievance, he would suffer retaliation, and that such retaliation would be sufficiently severe to deter a reasonable prisoner from filing the grievance. Even if the allegations in the complaint and attachment are true, therefore, they do not excuse Plaintiff's failure to timely exhaust his available administrative remedies.

It is undisputed that between December 19, 2008, and June 4, 2019, Plaintiff submitted over one hundred appeals that were processed by the CSP Corcoran Appeals Office, alone. (UMF 7.) This number does not account for the many other grievances that Plaintiff submitted while at other institutions, and the

13

many grievances submitted through the third and final level of review.  (See Moseley Decl. Ex. 1, ECF No. 29-5.)  In addition, it is undisputed that between May 1, 2019, and June 4, 2019 (when the complaint was filed), Plaintiff submitted three non-medical grievances which were accepted for review at the first or second level regarding events at CSP-Corcoran: (1) CSPC-5-19-02917; (2) CSPC-5-19-03073; and (3) CSPC-5-19-03546.[7]  (UMF 3.)  During the same time, Plaintiff also submitted three non-medical grievances that were accepted for review at the third level review: (1) 1900935; (2) 1905950; and (3) 190592.  (UMF 4.)  Furthermore, Plaintiff's documentation demonstrates his knowledge of the exhaustion requirement.  On the complaint form, signed and dated under penalty of perjury the day after the incident alleged herein, Plaintiff was asked if there was an administrative remedy process available, whether he had filed a grievance concerning all of the facts of the complaint, and whether the process is completed.  (Compl. at 2.)  Plaintiff affirmatively indicated that there was an administrative process at his institution and that he did not submit a grievance, but he left blank the line whether the process was completed.  (Id.)  Also, in the Form GA-22 Request for Interview, submitted on the same day he signed the complaint, Plaintiff requested a grievance form and threatened he would file his complaint within twenty-four hours if he was not provided a form.  (ECF No. 34 at 9.)

In addition, Plaintiff was knowledgeable about how to obtain grievance forms without direct involvement with a staff member of whom he is complaining.  (UMF 9, 15 (law library), UMF 14 (asking custody staff.).  Plaintiff also had knowledge of how to submit the grievance form without direct interaction with a staff member upon who he is complaining.  (UMF 16 (submit through mail), 17 (place in locked boxes).)  Thus, Plaintiff could have exercised of the options of which he clearly had knowledge by obtaining a form from a different staff member, at a different time or shift, and at a different location.  Indeed, Plaintiff's grievance history reflects that he successfully did so on other issues, having submitted a grievance less than a week later on May 28, 2019.  (Ceballos Decl. ¶ 11, Ex. 4.)

///

---

[7] Although Plaintiff contends that CSPC-5-19-3546 was received by the appeals office on May 17, 2019, but then cancelled and returned to Plaintiff (with a 602 form) attached for resubmission on May 27, 2019.  The fact remains it was submitted during this time frame, along with five other grievances.  (UMF 3, 4.)

Of further significance, Plaintiff had up to thirty days from the alleged event at issue herein during which he could have attempted to obtain and submit a grievance.  Cal. Code Regs. tit. 15, 3084.8(b).  However, as stated above, the complaint clearly reflects that it was signed the following day, May 23, 2019, and then filed on June 4, 2019.  (Compl. at 22.)  Thus, Plaintiff did not even make it halfway through the thirty-day period, much less the entire thirty days allowed, to try and submit a grievance form.

Plaintiff's contention that he could not submit a grievance because he was only permitted to submit a new appeal once every fourteen days, is without merit.  Cal. Code Regs. tit. 15, §§ 3084.1(f), 3084.6(b)(3).  Plaintiff provides no evidence to demonstrate that this rule prevented him from filing within the relevant time period or to seek leave to submit additional grievances.   Indeed, Plaintiff filed a grievance at the first level of review on May 17, 2019, and then on June 17, 2019.  (Ceballos Decl. Ex. 1 at 10.)  Thus, based on these dates, Plaintiff could have submitted a grievance regarding the alleged events on May 22, 2019, with the permitted time he just chose not to do so.  See Sealey v. Busichio, 696 Fed.Appx. 779, 781 (9th Cir. 2017) (finding plaintiff's continued filing of inmate appeals "weakens the objective basis for his contention that he was deterred from using the normal grievance process.")  Indeed, in his opposition, Plaintiff acknowledges that "he had other serious appeal obligations to attend to, that require his attention." (ECF No. 34 at 6.)  Plaintiff's assertion supports the conclusion that administrative remedies were available to Plaintiff, but he simply chose to pursue other grievances that were more important to him.  Further, the Court may not excuse the failure to exhaust under the PLRA based on Plaintiff purported special circumstances.  See Ross v. Blake, 136 S.Ct. 1850, 1857 (2016); Clark v. Beard, 715 Fed.Appx. 776, 777 (9th Cir. 2018) (finding the fourteen-day limit under § 3084.1(f) rationally advances the goals of preserving prison resources).  Accordingly, Defendants' motion for summary judgment should be granted, and the instant action should be dismissed, without prejudice, for failure to exhaust the administrative remedies.

## V.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment be granted; and

15

2.      The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 12, 2020**

UNITED STATES MAGISTRATE JUDGE

16